## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

KANA CAPLAN and RICHARD CAPLAN,      *
                                     *
Plaintiffs,                          *
                                     *
v.                                   *
                                     *
MARTIN WEIS and EAGLES LAKE, INC.,   *
                                     *
Defendants.                          *
                                     *

## COMPLAINT

KANA and RICHARD CAPLAN file this Complaint and respectfully state as follows:

### NATURE OF ACTION

1.   This civil action seeks statutory damages for Defendants' violations of the Residential Lead-Based Paint Hazard Reduction Act of 1992. This action also includes supplemental state law claims for the return of a security deposit, compensatory damages, and punitive damages.

2.   The Residential Lead-Based Paint Hazard Reduction Act of 1992, 42 U.S.C. §§ 4851-56, is intended to, among other things, protect tenants from lead poisoning by requiring the owners and managing

agents of residential properties to warn tenants about lead-based paint and lead-based paint hazards, and to provide prospective tenants with certain information about how to protect themselves and their families against the dangers of lead poisoning. Defendants violated the Residential Lead-Based Paint Hazard Reduction Act by failing to make the required disclosures, thereby denying Plaintiffs the opportunity to take steps to protect themselves and their infant son from exposure to lead.

## JURISDICTION

3. The Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 4852d(b)(3). The Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a).

## VENUE

4. Venue is proper in this Court because the subject rental property is located in the Northern District of Georgia. 28 U.S.C. § 1391(b).

## PARTIES

5. Plaintiffs Kana Caplan and Richard Caplan, as tenants and lessees, entered into a Residential Lease with Defendants Eagles Lake, Inc. and Martin Weis.

## STATEMENT OF FACTS

6.      In the fall of 2013, Plaintiffs Kana Caplan and Richard Caplan were

planning to move to Atlanta.


7.      Kana Caplan saw an online advertisement for a rental house located

at 111 Waddell Street N.E., Atlanta, Georgia ("Subject House").


8.      Kana Caplan called and spoke with Defendant Martin Weis on the

telephone.


9.      Kana Caplan stated she was looking for a house to rent with her

husband and infant son.


10.     Martin Weis stated that the Subject House was historic and had

recently been renovated.


11.     Martin Weis sent photographs of the Subject House that did not

disclose any defects.

12.   Martin Weis faxed a proposed Residential Lease, a signed copy of
      which is attached as Exhibit A.

13.   The Residential Lease specified a minor child would reside at the
      Subject House.

14.   Defendants did not include any information on possible lead-based
      paint hazards in the Lease or attachments.

15.   Defendants did not otherwise disclose any information about lead-
      based paint hazards.

16.   Plaintiffs returned the signed Lease and sent payment to Defendants
      for the deposit and first month's rent, a total of $2,800.

17.   The Residential Lease was signed on August 9, 2013.

18.   The term of the Residential Lease began on September 1, 2014.

19.    The Caplans planned to move to the Subject House in late September 2014.

20.    The Residential Lease specified that no inspection of the premises had taken place as of August 9, 2013 (Clause 11).

21.    On August 19, 2013, Kana Caplan visited the Subject House for the first time and observed peeling paint on the interior walls and trim.

22.    Kana Caplan informed Martin Weis of peeling paint and other maintenance problems.

23.    Martin Weis responded that the house would be cleaned and painted before the Caplans moved in, including the trim.

24.    Martin Weis subsequently stated that the house had been painted, including the trim.

25.   On September 24, 2013, the Caplans arrived at the Subject House the day before the movers were scheduled to arrive with their furniture and other possessions. The house was dirty and only partially painted. There were dead bugs on the windowsills and peeling paint on the trim.

26.   The Caplans cleaned as much as they could before the movers arrived. Kana Caplan contacted Martin Weis about the state of the house. Defendant Martin Weis stated that he meant to have it cleaned before they moved in, but did not. He agreed to send someone to clean later that week after the movers left.

27.   On September 25, 2013, the movers moved the Caplans' possessions into the house.

28.   The Caplans also noticed there were a lot of flying bugs in the house, including mosquitoes. Kana and Richard Caplan and their son suffered mosquito bites on their face and bodies.

29.    On September 26, 2013, the cleaner sent by Defendants spent a full
day cleaning the house, but she was not able to finish cleaning the
Subject House because it was so dirty. When she cleaned the house,
paint chips from the doors, walls, windows, and trim fell onto the
floor. When the cleaner moved the refrigerator and washer/dryer to
clean behind them, she discovered holes in the floor that lead down
to the crawlspace. There were rodent droppings surrounding these
holes and it also appeared that mosquitoes were entering the house
from these holes.

30.    Kana Caplan called Martin Weis and they discussed numerous
issues with the Subject House -- the bugs, the holes leading down to
the crawl space, the dirt, and the peeling paint.

31.    During the telephone conversation, Kana Caplan asked Martin Weis
if it was possible that the paint contained lead.

32.   During the telephone conversation, Martin Weis stated that many houses in the neighborhood contained lead paint and that it was possible the Subject House contained lead paint.

33.   During the telephone conversation, Martin Weis stated he would take care of the problems with the Subject House.

34.   Plaintiffs paid $1,300 for the second month's rent, which reflected an agreed upon $100 deduction for supplies already paid by Plaintiffs to clean and to repair holes in the Subject House.

35.   Defendants did not repair the Subject House in a timely or proper manner.

36.   Concerned by the Defendants' failure to repair the Subject House and Martin Weis' statement that the House may have lead paint, Kana Caplan did research on October 3, 2013 that caused her to be concerned for her family's immediate safety.

37. Kana Caplan read that young children are particularly susceptible to the dangers of lead paint. She also read about lead dust inhalation hazards caused by renovating houses built before 1978. Because Martin Weis stated the Subject House had been recently renovated and because the windows were painted shut, Kana Caplan believed it was possible there was lead dust in the air that created an inhalation hazard.

38. The Caplans removed their infant son from the house and purchased lead paint swab test kits from Lowe's. Several tests conducted in the baby's room yielded positive results for the presence of lead paint. The Caplans gathered some belongings and moved into a hotel that night.

39. The Caplans notified Martin Weis of the lead paint test results and told Defendants to remediate the problem or they would be forced to move out.

40.   Defendants refused to remediate the problem. Because Defendants refused to remediate the lead hazard, the Caplans were forced to vacate the House.

41.   The Subject House could not be used for its intended purpose, habitation by a family with a young child.

42.   The Caplans found another place to live but it was more expensive because of the time pressure and market availability.

43.   The Caplans hired an environmental testing company, National Environmental Solutions, Inc., to perform a lead-based paint inspection of the Subject House.

44.   The National Environmental Solutions, Inc. inspection identified the following lead-based paint hazards, 42 U.S.C. § 4851b(5): deteriorated lead-based paint on the exterior windows, walls, facia, soffit, porch, interior windows, baseboards, doors, casings, and jambs of the Subject House.

45.     The National Environmental Solutions, Inc. inspection identified the following lead-based paint hazards, 42 U.S.C. § 4851b(15): lead-containing dust in the front covered porch floors, dining room sill, and child's bedroom windowsill of the Subject House.

46.     On the advice of National Environmental Solutions, Inc., the Caplans had their possessions cleaned prior to moving into their new house and replaced their vacuum cleaner.

47.     Defendants refused to compensate the Caplans for the expenses incurred as a result of Defendants' failure to disclose information about lead-based paint hazards and Defendants' failure to provide premises fit for habitation by an infant.

48.     Defendants did not return the security deposit or compile a written statement listing reasons for retention of the security deposit.

49.     Upon information and belief, Defendants rented the Subject House to new tenants in December 2013.

## COUNT ONE – VIOLATION OF
## RESIDENTIAL LEAD-BASED PAINT HAZARD REDUCTION ACT

50.     In 1992, Congress enacted the Residential Lead-Based Paint Hazard
Reduction Act.

51.     The purposes of the Residential Lead-Based Paint Hazard Reduction
Act include, (A) "to encourage effective action to prevent childhood
lead poisoning by establishing a workable framework for lead-based
paint hazard evaluation and reduction"; (B) "to ensure that the
existence of lead-based paint hazards are taken into account in the ...
sale, rental, and renovation of homes and apartments"; and (C) "to
educate the public concerning the hazards and sources of lead-based
paint poisoning and steps to reduce and eliminate such hazards." 42
U.S.C. § 4851a.

52.     The Residential Lead-Based Paint Hazard Reduction Act and its
implementing regulations require, among other things, lessors of
residential properties subject to the Residential Lead-Based Paint
Hazard Reduction Act to provide certain information to tenants

when a new lease is entered into. 42 U.S.C. § 4852d; 24 C.F.R. §§ 35.88 and 35.92.

53. Lessors are required to provide an EPA-approved lead hazard information pamphlet. 42 U.S.C. § 4852d(a)(1)(A); 24 C.F.R. § 35.88(a)(1).

54. In addition, lessors are required to include in each contract for a lease or as an attachment to the lease, among other things:

   a. A Lead Warning Statement containing specific language as set forth in the regulations, 24 C.F.R. § 35.92(b)(1);

   b. A statement disclosing the presence of known lead-based paint and lead-based paint hazards or a statement that there is no knowledge of such information, 24 C.F.R. § 35.92(b)(2);

   c. A list of any records or reports pertaining to lead-based paint and lead-based paint hazards that have been provided to the lessee or a statement that there are no such reports, 24 C.F.R. § 35.92(b)(3); and

d.   A statement by the tenant affirming receipt of the information set out in 24 C.F.R. § 35.92(b)(2) and (b)(3) and receipt of the lead hazard information pamphlet, 24 C.F.R. § 35.92(b)(4).

55.   The Residential Lead-Based Paint Hazard Reduction Act and its implementing regulations also impose certain requirements on "agents" who enter into contracts with lessors for the purpose of leasing housing subject to the Residential Lead-Based Paint Hazard Reduction Act, among other things, each such agent is required to inform lessors of their obligations under various regulations, including 24 C.F.R. §§ 35.88 and 35.92. Agents are also required either to ensure that lessors perform all activities required under 24 C.F.R. §§ 35.88 and 35.92 or to personally ensure compliance with the requirements of such provisions. 42 U.S.C. § 4852d(a)(4); 24 C.F.R. § 35.94.

56.   Each Defendant is subject to the Residential Lead-Based Paint Hazard Reduction Act.

57.   Defendant Eagles Lake, Inc. is the owner of the Subject Property. 24 C.F.R. § 35.86.

58.   Defendant Eagles Lake, Inc. is a lessor of the Subject House. 24 C.F.R. § 35.86.

59.   Defendant Martin Weis is identified on the Residential Lease as "Landlord or Landlord's Agent."

60.   Defendant Martin Weis is a "lessor" and/or "agent" of the Subject House. 24 C.F.R. § 35.86.

61.   Defendant Martin Weis informed Kana Caplan that he has been a landlord for 38 years and that he owns more than 60 rental properties.

62.   Martin Weis is the CEO, CFO, and Secretary of Eagles Lakes, Inc.

63.   The Subject House is "target housing" within the scope of the
      Residential Lead-Based Paint Hazard Reduction Act. 24 C.F.R.
      § 35.86.

64.   The Subject House was built prior to 1978.

65.   On or around August 9, 2013, the Parties entered into a Residential
      Lease for the Subject House.

66.   For the Subject House, Defendants failed to make the disclosures
      required by the Residential Lead-Based Paint Hazard Reduction Act
      and/or failed to complete disclosure activities required by the
      Residential Lead-Based Paint Hazard Reduction Act.

67.   Defendants did not provide any lead hazard information pamphlet.
      42 U.S.C. § 4852d(a)(1)(A); 24 C.F.R. § 35.88(a)(1).

68.   The Residential Lease did not include any Lead Warning Statement.
      24 C.F.R. § 35.92(b)(1).

69.   The Residential Lease did not include any statement disclosing the presence of known lead-based paint and lead-based paint hazards or a statement that there is no knowledge of such information. 24 C.F.R. § 35.92(b)(2).

70.   The Residential Lease did not include any list of any records or reports pertaining to lead-based paint and lead-based paint hazards that have been provided to the lessee or a statement that there are no such reports. 24 C.F.R. § 35.92(b)(3).

71.   The Residential Lease did not include any statement by the tenant affirming receipt of the information set out in 24 C.F.R. § 35.92(b)(2) and (b)(3) and receipt of the lead hazard information pamphlet. 24 C.F.R. § 35.92(b)(4).

72.   Defendants thereby violated the Residential Lead-Based Paint Hazard Reduction Act of 1992 and its implementing regulations.

73. Defendants knowingly violated the Residential Lead-Based Paint Hazard Reduction Act of 1992 and its implementing regulations.

## COUNT TWO – NEGLIGENCE

74. Martin Weis and Eagles Lake, Inc. maintained the Subject House in a manner that breached the duty of care owed to Plaintiffs, thereby causing damages and constituting negligence.

75. Defendants failed to maintain the Subject House in a state of workmanlike maintenance and repair.

76. O.C.G.A. § 44-7-13 imposes an obligation on landlords to keep premises in repair.

77. Pursuant to O.C.G.A. § 44-7-2, a residential landlord cannot waive, assign, transfer, or otherwise avoid the obligations and liability imposed by O.C.G.A. § 44-7-13.

78.   The condition of the Subject House was not reasonably safe and suited for Plaintiffs' intended use, occupation by a family with an infant child.

79.   Defendants had notice of the defective conditions in the Subject House.

80.   Defendants failed to exercise reasonable care to repair the defective conditions in the Subject House.

81.   Defendants were further negligent in failing to warn Plaintiffs about potential lead-based paint hazards in the Subject House.

82.   Defendants' negligence caused property damage and other economic damages. These impacts were reasonably foreseeable consequences of Defendants' actions and inactions.

83.   Defendants' negligence caused a diminution of the rental value of the Subject House.

84. Defendants had a legal duty to warn Plaintiffs that the Subject House could contain lead paint. Defendants failed to do so, and that failure resulted directly in injury to Plaintiffs.

85. Defendants were negligent per se for violating the Atlanta Building Code and Atlanta Housing Code.

86. The Atlanta Building Code, Atlanta Code of Ordinances, Part III, Appendix A, Chapter I, Section 101.5(a), states that the "owner, or his designated agent, shall be responsible for the maintenance of buildings and structures."

87. The Atlanta Building Code, Atlanta Code of Ordinances, Part III, Appendix A, Chapter I, Section 101.5(a), states that all buildings and structures, both existing and new, and all parts thereof, shall be maintained in a safe condition.

88. Defendants failed to maintain the Subject House in a safe condition.

89.    The Atlanta Housing Code, Atlanta Code of Ordinances, Part III, Appendix E, Article II, Section 23, states that every interior wall shall be maintained in a state of workmanlike maintenance and repair, shall be substantially free from deterioration, and shall be safe.

90.    The interior walls of the Subject House were not maintained in a state of workmanlike maintenance and repair.

91.    The interior walls of the Subject House were not substantially free from deterioration.

92.    The interior walls of the Subject House were not safe.

93.    The interior walls contained peeling, deteriorated lead-based paint.

94.    The Atlanta Housing Code, Atlanta Code of Ordinances, Part III, Appendix E, Article II, Section 23(f), states that all windows shall be maintained in sound condition and workmanlike maintenance.

95.   The windows of the Subject House were not maintained in sound condition and workmanlike maintenance.

96.   The windows of the Subject House contained deteriorated lead-based paint.

97.   The windows of the Subject House contained deteriorated lead-based paint constituting a lead hazard.

98.   The windowsills of the Subject House contained deteriorated lead-based paint.

99.   The windowsills of the Subject House contained deteriorated lead-based paint constituting a lead hazard.

100.  The windowsills of the Subject House had lead-containing dust constituting a lead hazard.

101.  The Atlanta Housing Code, Atlanta Code of Ordinances, Part III, Appendix E, Article II, Section 23(f)(2), states that all windows, other than a fixed window not designed for ventilation, shall be capable of being easily opened.

102.  The windows of the Subject House were painted shut.

103.  The Atlanta Housing Code, Atlanta Code of Ordinances, Part III, Appendix E, Article II, Section 23(j) states that all interior floors shall be vermin and rodent proof, shall be maintained in sound condition and workmanlike maintenance and repair, and shall be free of holes.

104.  The interior floors of the Subject House were not vermin and rodent proof.

105.  The interior floors of the Subject House were not maintained in sound condition and workmanlike maintenance and repair.

106.  The interior floors of the Subject House had holes.

107.   Defendants' violations of the Atlanta Building Code and Atlanta Housing Code are negligence per se because: a) Plaintiffs are within the class of persons the Codes are intended to protect; b) the harm complained of was the harm the Codes are intended to guard against; and c) the Code violations caused damage to Plaintiffs.

## COUNT THREE -
## FAILURE TO RETURN SECURITY DEPOSIT

108.   Plaintiffs paid $1,400.00 as a security deposit for the Subject House.

109.   Defendants did not return Plaintiffs' security deposit or compile a written statement listing reasons for retention of the security deposit.

110.   "Within three business days after the date of the termination of occupancy, the landlord or his agent shall inspect the premises and compile a comprehensive list of any damage done to the premises which is the basis for any charge against the security deposit and the estimated dollar value of such damage." O.C.G.A. § 44-7-33.

111.   Defendants did not provide Plaintiffs with any list of alleged damages done to the premises.

112.   With exceptions not applicable in this case, "within one month after the termination of the residential lease or the surrender and acceptance of the premises, whichever occurs last, a landlord shall return to the tenant the full security deposit which was deposited with the landlord by the tenant… In the event that actual cause exists for retaining any portion of the security deposit, the landlord shall provide the tenant with a written statement listing the exact reasons for the retention thereof." O.C.G.A. § 44-7-34.

113.   Defendants did not return any security deposit to Plaintiffs.

114.   Defendants did not provide Plaintiffs with a written statement listing reasons for retention of the security deposit.

115.  "The failure of a landlord to provide each of the written statements within the time periods specified in Code Sections 44-7-33 and 44-7-34 shall work a forfeiture of all his rights to withhold any portion of the security deposit or to bring an action against the tenant for damages to the premises…"O.C.G.A. § 44-7-35.

116.  "Any landlord who fails to return any part of a security deposit which is required to be returned to a tenant pursuant to this article shall be liable to the tenant in the amount of three times the sum improperly withheld plus reasonable attorney's fees; provided, however, that the landlord shall be liable only for the sum erroneously withheld if the landlord shows by the preponderance of the evidence that the withholding was not intentional and resulted from a bona fide error which occurred in spite of the existence of procedures reasonably designed to avoid such errors." O.C.G.A. § 44-7-35.

## COUNT FOUR -
## EXPENSES OF LITIGATION PURSUANT TO O.C.G.A. § 13-6-11

117.   Defendants acted in bad faith, have been stubbornly litigious,

and/or caused Plaintiffs unnecessary trouble and expense, thereby

entitling Plaintiffs to recover the expenses of litigation, including

reasonable attorney's fees and expert witness fees, pursuant to

O.C.G.A. § 13-6-11.

## COUNT FIVE - PUNITIVE DAMAGES

118.   Defendants' actions and inactions demonstrate willful misconduct,

wantonness, oppression, or that entire want of care which would

raise the presumption of a conscious indifference to consequences,

for which Plaintiffs seek punitive damages pursuant to O.C.G.A. §

51-12-5.1.


**WHEREFORE,** Mr. and Mrs. Caplan respectfully request:

a)   That a trial by jury be had on all issues;

b)    That this Court issue a judgment finding that Defendants

knowingly violated the Residential Lead-Based Paint Hazard

Reduction Act of 1992 and its implementing regulations and

therefore enter judgment in favor of Plaintiffs and jointly and severally against Defendants in an amount equal to 3 times the amount of damages incurred by Plaintiffs;

c)    That this Court enters judgment in favor of Plaintiffs and against Defendants as compensation for: (i) the cost to remediate personal property, (ii) moving expenses, (iii) additional living expenses; (iv) diminution in rental value, (v) return of security deposit, or alternatively, three times the sum improperly withheld plus reasonable attorney's fees pursuant to O.C.G.A. § 44-7-35, (vi) the cost of testing the house for lead-based paint, and (vii) other necessary expenses incurred as a result of Defendants' conduct;

d)    That this Court enters judgment in favor of Plaintiffs and against Defendants as reasonable expenses of litigation, including attorney's fees, expert witness fees, and other litigation expenses, pursuant to 42 U.S.C. § 4852d(b)(4), and O.C.G.A. §§ 13-6-11 and 44-7-35;

e)    That this Court enters judgment in favor of Plaintiffs and against Defendants for punitive damages; and

f)    That this Court grant such other relief as is deemed just.

Respectfully submitted this 1st day of May, 2014.


s/Jon Schwartz

Georgia Bar Number 631038
Attorney for Kana and Richard Caplan
Jon Schwartz, Attorney at Law, P.C.
1170 Peachtree St., N.E., Suite 1200
404-667-3047 (telephone)
jon@jonschwartz.net