IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |  |
|---|---|---|
| KANA CAPLAN and RICHARD CAPLAN, | : : : | |
| Plaintiffs, | : : | |
| v. | : : | CIVIL ACTION NO. 1:14-CV-01321-RWS |
| MARTIN WEIS and EAGLES LAKE, INC., | : : : : | |
| Defendants. | : : | |

## **ORDER**

This case comes before the Court on Defendants' Motion to Dismiss [4] and Motion to Strike Plaintiffs' Response [12]. After reviewing the record, the Court enters the following Order.

## **Background**

This action arises out of a lessor's alleged failure to notify tenants that their rental property contained lead-based paint. Plaintiffs Kana and Richard Caplan planned to move to Atlanta in the fall of 2013. After inquiring about an online advertisement for a house to rent, Plaintiffs entered into a residential

AO 72A
(Rev.8/82)

lease with Defendants Eagles Lake, Inc. and Martin Weis. Defendants did not disclose any defects in the house, and neither the lease agreement nor attachments contained any information about lead-based paint hazards. The lease did specify, however, that a minor child would live in the house. The parties executed the lease on August 9, 2013, and Plaintiffs paid the deposit and first month's rent for a total of $2,800. The lease term began on September 1, 2013.

      Plaintiffs moved into the house on September 24, 2013. They discovered that the house was very dirty and saw that Defendants had not finished painting as they had promised. Plaintiffs also discovered other problems, including holes in the floor and pests. A couple of days later, Defendants sent someone to clean the house. As she cleaned, paint chips from the doors, walls, windows, and trim fell on the floor. Kana Caplan then asked Mr. Weis during a telephone conversation if it was possible the paint contained lead. Mr. Weis said that many houses in the neighborhood contained lead paint, and it was possible their home did, too. Mr. Weis said he would take care of the problems with the house. Plaintiffs paid their second month's rent, but Defendants did not make any repairs.

2

On October 3, 2013, Ms. Caplan did some research about lead paint that caused her to become concerned for the safety of her family, especially her infant son. The Caplans purchased lead-paint test kits, which yielded positive results. They moved into a hotel that night. The Caplans told Mr. Weis that the paint tested positive for lead and asked him to fix the problem or they would be forced to move out. Mr. Weis refused.

The Caplans found another more expensive home to rent, and after consulting with an environmental testing company, they found out that their first house contained lead-based paint throughout the home. An inspection also revealed lead-containing dust in several spots of the house. The company advised the Caplans to have their possessions cleaned before moving into their new home and to replace their vacuum cleaner.

Defendants refused to compensate the Caplans for these expenses and failed to return Plaintiffs' security deposit. Plaintiffs allege that Defendants failed "to disclose information about lead-based paint hazards" and failed "to provide premises fit for habitation by an infant." (Compl., Dkt. [1] ¶ 47.) In that regard, Plaintiffs bring claims for (1) violation of the Residential Lead-Based Paint Hazard Reduction Act's requirement that lessors disclose

3

information about lead hazards; (2) negligence in failing to maintain the house in a state of workmanlike maintenance and repair; and (3) failure to return the security deposit within one month in compliance with O.C.G.A. § 44-7-34. Defendants move for dismissal of all claims.

## Discussion

### I.     Motion to Strike [12]

Defendants ask the Court to strike Plaintiffs' response brief as untimely because Plaintiffs filed their response on June 16, 2014, nineteen days after Defendants filed their May 28, 2014 motion to dismiss. Generally, parties have fourteen days to file a response to a motion to dismiss. LR 7.1B, NDGa. Plaintiffs correctly point out that service of documents filed through the case management/electronic case filing system is the "equivalent of service of the pleading or other paper by first class mail, postage prepaid," and afforded the additional three days allowed under Federal Rule of Civil Procedure 6(d). LR, NDGA at Appendix H, II(B)(1)(a). Therefore, Plaintiffs had seventeen days to respond. Because the seventeenth day fell on Saturday, June 14, Plaintiffs timely filed their response on Monday, June 16, the next day the courthouse was open. See FED. R. CIV. P. 6(a)(1)(C) (stating that if a time period ends on

4

"a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday or legal holiday"). That being the case, Defendants' Motion to Strike [12] is **DENIED**.

## II.     Motion to Dismiss Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While this pleading standard does not require "detailed factual allegations," mere labels and conclusions or "a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). In order to withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). A complaint is plausible on its face when the plaintiff pleads factual content necessary for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. Id.

"At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273

5

n.1 (11th Cir. 1999).  However, the same does not apply to legal conclusions set forth in the complaint.  See Iqbal, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id.  Furthermore, the court does not "accept as true a legal conclusion couched as a factual allegation."  Twombly, 550 U.S. at 555.

### III.  Residential Lead-Based Paint Hazard Reduction Act

Congress passed the Residential Lead-Based Paint Hazard Reduction Act of 1992 ("Lead Hazard Act") to address the dangers of lead-based paint.  Pub. L. No. 102-550, Title X, 106 Stat. 3672 (1992) (codified at 42 U.S.C. §§ 4851-4856 (2006)).  The Lead Hazard Act authorized the Environmental Protection Agency to enact regulations regarding the "disclosure of lead-based paint hazards in target housing which is offered for sale or lease."  42 U.S.C. § 4852d(a)(1).  Under this disclosure rule, sellers and lessors are required to provide purchasers and lessees of "target housing" certain information regarding lead-based paint dangers in their homes.  See 40 C.F.R. §§ 745.107, 745.113.  The regulations define "target housing" as "any housing constructed prior to 1978."  40 C.F.R. § 745.103.  Moreover, the Lead Hazard Act provides a private cause of action for violation of the disclosure rule:

6

> Any person who knowingly violates the [disclosure rule] provisions in this section shall be jointly and severally liable to the purchaser or lessee in an amount equal to 3 times the amount of damages incurred by such individual.

42 U.S.C. § 4852d(b)(3).

Defendants argue that (1) the Lead Hazard Act does not apply to the subject rental property; (2) Plaintiff Kana Caplan's claim under the Lead Hazard Act should be dismissed because she was not a signatory to the lease; and (3) Defendant Martin Weis should be dismissed because he was not a party to the lease between Plaintiff Richard Caplan and Defendant Eagles Lake.

First, Defendants assert that the Lead Hazard Act only applies to homes that are federally funded. (See Defs.' Br., Dkt. [4-1] at 5.) Plaintiffs respond that Defendants are referring to the regulations in Title 24, Part 35, Subpart B, of the Code of Federal Regulations, which implement additional requirements for "all target housing that is federally owned" or "target housing receiving Federal assistance." 24 C.F.R. § 35.100(b)(1). On the other hand, Plaintiffs rely on the disclosure regulations under Title 24, Part 35, Subpart A, which "applies to all transactions to sell or lease target housing," subject to certain exceptions not at issue here. 24 C.F.R. § 35.82; see also 24 C.F.R. § 35.88

7

AO 72A
(Rev.8/82)

(detailing disclosure requirements for sellers and lessors).  The Court agrees that Subpart B imposes additional requirements that do not apply to the subject rental property.  Rather, Plaintiffs properly cite Subpart A, and thus the Lead Hazard Act's disclosure requirements apply to the subject rental property.

Second, Defendants assert that Ms. Caplan's claim under the Lead Hazard Act should be dismissed because she did not sign the lease and therefore has no standing under the statute, which creates a cause of action for "the purchaser or lessee."  42 U.S.C. § 4852d(a)(1).  Defendants cite Sabra ex rel. Waechter v. Iskander, in which the court held that a child of a lessee could not recover under the Lead Hazard Act because the text of the statute only allows claims for purchasers or lessees, not children of lessees.  No. 1:08-CV-1204-TWT, 2008 WL 4889681, at *4 (N.D. Ga. Nov. 10, 2008).  In their Complaint, Plaintiffs allege that "Kana Caplan and Richard Caplan, as tenants and lessees, entered into a Residential Lease" for the subject property.  (Compl., Dkt. [1] ¶ 5.)  Plaintiffs also attached a copy of the residential lease to their Complaint.[1]

---

[1] "The district court generally must convert a motion to dismiss into a motion for summary judgment if it considers materials outside the complaint." D.L. Day v. Taylor, 400 F.3d 1272, 1275-76 (11th Cir. 2005); see also FED. R. CIV. P. 12(d). However, documents attached to a complaint are considered part of the complaint. FED. R. CIV. P. 10(c).

8

The lease lists "Kana and Richard Caplan" as tenants.  (See Dkt. [1-1] at 1.) The only tenant to sign the lease was Richard Caplan, however.  (See id. at 3.) Neither Ms. Caplan nor anyone else is a signatory to the lease as a tenant.

Still, even if a lessee does not sign a lease, the lease could be enforceable if the lessee partially performed under the terms of the agreement.  See Cardin v. Outdoor E., 468 S.E.2d 31, 31-32 (Ga. Ct. App. 1996) (citing O.C.G.A. § 13-5-31).  Here Plaintiffs allege that they were both lessees under the lease, and the lease lists Ms. Caplan as a tenant even though she did not sign it, demonstrating an intent to bind her as well.  Plaintiffs also allege that they partially performed under the terms of the lease by paying a deposit and two monthly rent payments.  Therefore, at the motion to dismiss stage, Ms. Caplan has plausibly alleged standing under the Lead Hazard Act as a lessee.

Defendants' final argument on this claim is that Mr. Weis should be dismissed because Eagles Lake was a party to the lease, not Mr. Weis.  The Lead Hazard Act's language creating a cause of action is broad, authorizing suit against "[a]ny person who knowingly violates" the disclosure rule.  42 U.S.C. § 4852d(b)(3).  The statute does not limit liability to the seller or lessor. Furthermore, the statute states that defendants will be "jointly and severally

9

liable," id., suggesting that individuals beyond the legal seller or lessor could be liable. Given the broad language of the statute, the Court finds that the Lead Hazard Act applies to Mr. Weis because Plaintiffs allege that he executed the lease on behalf of Eagles Lake and communicated with them about the property. Mr. Weis therefore could have violated the disclosure rule.

## IV.   Negligence

Plaintiffs also bring a claim for negligence, alleging that Defendants breached a duty of care owed to Plaintiffs by "fail[ing] to maintain the Subject House in a state of workmanlike maintenance and repair." (Compl., Dkt. [1] ¶ 75.) Defendants argue that Plaintiffs fail to allege that they sustained physical injury as a result of exposure to lead-based paint as required under Georgia law. They also argue that Ms. Caplan and Mr. Weis should be dismissed for the reasons stated above.

First, courts have held that in cases seeking recovery for physical injuries involving exposure to toxic substances, a plaintiff must prove that the defendant's negligence resulted in physical injury amounting to "actual disease, pain, or impairment of some kind." See, e.g., Waechter, 2008 WL 4889681, at *2 (quoting Boyd v. Orkin Exterminating Co., 381 S.E.2d 295, 298 (Ga. Ct.

10

App. 1989), overruled on other grounds by Hanna v. McWilliams, 446 S.E.2d 741 (Ga. Ct. App. 1994)) (internal quotation marks omitted). Indeed, Defendants are correct that Plaintiffs have not alleged a physical injury of this type. But Plaintiffs do not attempt to recover for physical injury; instead they allege that Defendants' negligence resulted in property damage because they had to have their possessions cleaned and had to replace their vacuum cleaner. (See Compl., Dkt. [1] ¶ 46.) Defendants do not argue why Plaintiffs' alleged property damage is not recoverable under their negligence claim, nor do they raise any other arguments related to the elements of negligence.

Next, Defendants assert that Ms. Caplan cannot maintain a negligence claim because she did not sign the lease. Negligence claims do not depend on a plaintiff's privity with a defendant, however. See, e.g., Stancliff v. Brown & Webb Builders, Inc., 561 S.E.2d 438, 440 (Ga. Ct. App. 2002) ("[A] negligence claim does not depend upon privity of contract."); Ramey v. Leisure, Ltd., 421 S.E.2d 555, 558 (Ga. Ct. App. 1992) (holding that "appellant's contention that the claim [for negligent construction] must fail due to a lack of privity between himself and appellee is without merit because the cause of action is in tort

11

which requires no privity"). Thus, even assuming Ms. Caplan is not a lessee, she could still show that Defendants owed her a duty of care.

Finally, as stated above, Defendants argue that all claims against Mr. Weis should be dismissed because he was not a party to the lease in his personal capacity. Even so, Plaintiffs allege he participated in the alleged negligence because he communicated with Plaintiffs about maintenance issues but refused to address the lead-based paint problem. (See Compl., Dkt. [1] ¶¶ 39-40.) "One who is sued in his personal capacity, whether the alter ego, an officer or agent of a corporation, may not escape personal liability for his tortious misconduct damaging employees or third persons by hiding behind the corporate veil even in those situations where the corporation might also be a proper party to the action." Wrigley v. Nottingham, 141 S.E.2d 859, 861 (Ga. Ct. App. 1965), rev'd on other grounds by Nottingham v. Wrigley, 144 S.E.2d 749 (Ga. 1965); see also Moore v. Barge, 436 S.E.2d 746, 749 (Ga. Ct. App. 1993) ("Although shareholders or officers in a corporation enjoy a limited liability, they may be held liable individually for their own tortious or wrongful acts."). Plaintiffs allege that Mr. Weis personally participated in the alleged tortious misconduct. Consequently, Defendant's argument fails.

12

## Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss [4] and Motion to Strike Plaintiffs' Response [12] are **DENIED**.

**SO ORDERED**, this   11th   day of February, 2015.

_____
**RICHARD W. STORY**
United States District Judge

AO 72A
(Rev.8/82)